**IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF OKLAHOMA**

EDDIE I. BYERS,                         )
                                        )
                 Plaintiff,             )
                                        )
v.                                      )         Case No. CIV-17-117-KEW
                                        )
COMMISSIONER OF THE SOCIAL              )
SECURITY ADMINISTRATION,                )
                                        )
                 Defendant.             )

## OPINION AND ORDER

Plaintiff Eddie I. Byers (the "Claimant") requests judicial review of the decision of the Commissioner of the Social Security Administration (the "Commissioner") denying Claimant's application for disability benefits under the Social Security Act. Claimant appeals the decision of the Administrative Law Judge ("ALJ") and asserts that the Commissioner erred because the ALJ incorrectly determined that Claimant was not disabled. For the reasons discussed below, it is the finding of this Court that the Commissioner's decision should be and is AFFIRMED.

### Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment. . ." 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if his physical or mental impairment or

impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. . ." 42 U.S.C. §423(d)(2)(A). Social Security regulations implement a five-step sequential process to evaluate a disability claim. *See*, 20 C.F.R. §§ 404.1520, 416.920.[1]

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g). This Court's review is limited to two inquiries: first, whether the decision was supported by substantial evidence; and, second, whether the correct legal standards were applied. Hawkins v. Chater, 113 F.3d 1162, 1164

---

[1] Step one requires the claimant to establish that he is not engaged in substantial gainful activity, as defined by 20 C.F.R. §§ 404.1510, 416.910. Step two requires that the claimant establish that he has a medically severe impairment or combination of impairments that significantly limit his ability to do basic work activities. 20 C.F.R. §§ 404.1521, 416.921. If the claimant is engaged in substantial gainful activity (step one) or if the claimant's impairment is not medically severe (step two), disability benefits are denied. At step three, the claimant's impairment is compared with certain impairments listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1. A claimant suffering from a listed impairment or impairments "medically equivalent" to a listed impairment is determined to be disabled without further inquiry. If not, the evaluation proceeds to step four, where claimant must establish that he does not retain the residual functional capacity ("RFC") to perform his past relevant work. If the claimant's step four burden is met, the burden shifts to the Commissioner to establish at step five that work exists in significant numbers in the national economy which the claimant – taking into account his age, education, work experience, and RFC – can perform. Disability benefits are denied if the Commissioner shows that the impairment which precluded the performance of past relevant work does not preclude alternative work. *See generally,* Williams v. Bowen, 844 F.2d 748, 750-51 (10th Cir. 1988).

(10th Cir. 1997)(citation omitted).  The term "substantial evidence"
has been interpreted by the United States Supreme Court to require
"more than a mere scintilla.  It means such relevant evidence as a
reasonable mind might accept as adequate to support a conclusion."
Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting
Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)).  The
court may not re-weigh the evidence nor substitute its discretion
for that of the agency.  Casias v. Secretary of Health & Human
Servs., 933 F.2d 799, 800 (10th Cir. 1991).  Nevertheless, the court
must review the record as a whole, and the "substantiality of the
evidence must take into account whatever in the record fairly
detracts from its weight."  Universal Camera Corp. v. NLRB, 340 U.S.
474, 488 (1951); see also, Casias, 933 F.2d at 800-01.

## Claimant's Background

Claimant was 48 years old at the time of the ALJ's decision.
Claimant completed his high school education.  Claimant has worked
in the past as a maintenance worker at a race track and assistant
supervisor.  Claimant alleges an inability to work beginning June
11, 2013 due to limitations resulting from arthritis pain, neck and
back pain, diabetes, left leg and knee problems, and anger issues.

## Procedural History

On October 21, 2013, Claimant protectively filed for

disability insurance benefits under Title II (42 U.S.C. § 401, *et seq.*) and for supplemental security income pursuant to Title XVI (42 U.S.C. § 1381, *et seq.*) of the Social Security Act. Claimant's applications were denied initially and upon reconsideration. On June 16, 2015, Administrative Law Judge ("ALJ") B. D. Crutchfield conducted an administrative hearing by video with Claimant appearing in Poteau, Oklahoma and the ALJ presiding from Tulsa, Oklahoma. On October 26, 2015, the ALJ entered an unfavorable decision. The Appeals Council denied review on March 1, 2017. As a result, the decision of the ALJ represents the Commissioner's final decision for purposes of further appeal. 20 C.F.R. §§ 404.981, 416.1481.

**Decision of the Administrative Law Judge**

The ALJ made her decision at step five of the sequential evaluation. She determined that while Claimant suffered from severe impairments, he did not meet a listing and retained the residual functional capacity ("RFC") to perform a range of sedentary work.

**Errors Alleged for Review**

Claimant asserts the ALJ committed error in (1) reaching an improper RFC determination for the period from June 11, 2013 to January 21, 2014, and (2) failing to demonstrate that there are other jobs that Claimant could perform at step five.

## RFC Determination

In her decision, the ALJ found Claimant suffered from the severe impairments of history of obesity, depressive disorder, NOS, and anti-social personality disorder. (Tr. 13). The ALJ determined that prior to January 21, 2014 - the date Claimant became disabled - Claimant could perform less than a full range of light work. In so doing, the ALJ found Claimant could lift/carry up to 20 pounds occasionally and up to ten pounds frequently; could sit for up to six hours in an eight hour workday; could stand/walk for up to six hours in an eight hour workday with normal breaks; could push/pull up to 20 pounds occasionally and up to ten pounds frequently; could occasionally climb ladders/ropes/scaffolds; was limited to simple tasks with routine supervision; could relate to supervisors and peers on a superficial work basis and adapt to a routine work situation; and could not relate to the public. (Tr. 14). After January 21, 2014, the ALJ determined that while Claimant could perform sedentary work (Tr. 16-17), considering his age, education, work experience, and RFC, no jobs existed in significant numbers in the national economy that Claimant could perform. (Tr. 20).

After consultation with a vocational expert, the ALJ determined that during the period from June 11, 2013 to January 21, 2014, Claimant could perform the representative jobs of poultry processor,

5

small product assembler, and agriculture produce sorter, all of which the ALJ concluded existed in sufficient numbers in both the regional and national economies. (Tr. 19-20). As a result, the ALJ concluded that Claimant was not under a disability from June 11, 2013 to January 21, 2014 but was disabled thereafter. (Tr. 20).

Claimant contends the ALJ's RFC for the limited period was not supported by substantial evidence since the ALJ did not consider the medical records from Good Samaritan Clinic. The ALJ cited to the report of Dr. Wojciech Dulowski, a consultative examiner in this case. Dr. Dulowski examined Claimant on November 28, 2011. He found Claimant to be morbidly obese with good coordination, equal strength in the upper and lower extremities, and good reflexes. He noted Claimant walked slowly with bilateral limping and used a cane. However, his gait was good, safe, and stable. Dr. Dulowski opined that Claimant's difficulty was probably because of his weight and back pain to walk on his tiptoes and heels. Claimant's grip strength was 5/5 with good gross and fine manipulation. (Tr. 292). Claimant's cervical, thoracic, and lumbar spine alignment was normal. He was very tender in the cervical and thoracolumbar spine in midline with spasms of the paravertebral muscles. All passive movements of the joints in the upper and lower extremities were normal. Dr. Dulowski assessed Claimant with a history of morbid obesity, sleep apnea (on c-pap), diabetes mellitus, hypertension

6

(not very well controlled), history of osteoarthritis, history of mechanical back pain, but neurologically intact, history of pneumonia with pleural effusion after throacocentesis, history of a motor vehicle accident in 1994 or 1998 with multiple fractures of the scapula and both ankle joints.  (Tr. 293).

Claimant was also underwent a mental status examination by Dr. Diane Brandmiller on March 6, 2012.  Claimant reported a history of 20-50 suicide attempts, most recently about ten years prior to the examination by driving a motorcycle off of a cliff.  He did not obtain medical treatment after this action.  He experienced hallucinations around age 8 or 9 and had them most recently about two years prior.  Claimant was prescribed and takes Prozac which he indicated helped him take his mind off of things people say.

Claimant lived with his mother, eats one or two meals a day, does not cook, washes dishes, does laundry, and feeds and waters a dog and a horse.  He does not do other household chores because of leg and back problems.  He watches television for ten hours a day. He grocery shops once or twice a month and stays in the store for 60-90 minutes.  Claimant has a driver's license and is able to drive alone on unfamiliar routes.  He can read a map.  He does not take to friends or relatives.  He rises at 10:00 a.m. or 11:00 a.m. and goes to bed around 10:00 p.m.  (Tr. 297).

Dr. Brandmiller diagnosed Claimant with Depressive Disorder,

NOS, Alcohol Dependence, sustained, full remission, and Antisocial Personality Disorder. She concluded Claimant's long term memory and short term memory and abstract thinking were intact. Concentration was mildly impaired and performance on a reverse counting task improved with a simple as opposed to complex task. Expressive and receptive language skills appeared intact. He appeared able to understand and carry out simple instructions. He described a history of difficulty with authority figures including teachers and some supervisors. His mother handled his finances, as while he can do basic arithmetic, he could not write a check. Dr. Brandmiller believed he could handle funds. (Tr. 299-300).

The ALJ gave these opinions "great weight" as being supported by the medical record. She also recognized the third party function report of Claimant's wife which she gave "partial weight." (Tr. 16). Based upon these findings, the ALJ formulated the RFC for the restricted period.

Claimant contends the Good Samaritan Clinic records supports further restrictions. The record indicated Claimant had been out of medication for three months, walked with a cane and appeared to have difficulty getting up and down off of the examination table. (Tr. 306). While Claimant makes much of the notation regarding a cane, the note was not a prescription but merely an observation that Claimant had a cane with which he walked. His difficulty getting

on and off the table is consistent with the medical findings of Dr. Dulowski and adds no further restrictions not covered by the RFC. While Claimant seeks to equate getting on and off of a table with the ability to walk and stand, nothing in the record indicates a correlation between these actions.

With regard to the mental restrictions, Claimant engages in a recharacterization of each of the ALJ's findings in the RFC on mental abilities to insinuate a different conclusion on Claimant's ability to engage in basic work activities. Neither Claimant nor this Court may reweigh the evidence, only determine its sufficiency. *See* Lax v. Astrue, 489 F.3d 1080, 1084 (10th Cir. 2007).

"[R]esidual functional capacity consists of those activities that a claimant can still perform on a regular and continuing basis despite his or her physical limitations." White v. Barnhart, 287 F.3d 903, 906 n. 2 (10th Cir. 2001). A residual functional capacity assessment "must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts ... and nonmedical evidence." Soc. Sec. R. 96-8p. The ALJ must also discuss the individual's ability to perform sustained work activities in an ordinary work setting on a "regular and continuing basis" and describe the maximum amount of work related activity the individual can perform based on evidence contained in

the case record. <u>Id</u>. The ALJ must "explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved." <u>Id</u>. However, there is "no requirement in the regulations for a direct correspondence between an RFC finding and a specific medical opinion on the functional capacity in question." <u>Chapo v. Astrue</u>, 682 F.3d 1285, 1288 (10th Cir. 2012). The ALJ's RFC assessment was supported by substantial evidence.

Claimant also contends the ALJ failed to properly evaluate his credibility. The ALJ's credibility findings are somewhat sparse. However, the opinion evidence cited by the ALJ contradicts Claimant's subjective statements made at the hearing such that the ALJ's finding of reduced credibility is supported.

**Step Five Questioning of the Vocational Expert**

Claimant also challenges the thoroughness of the hypothetical questions posed to the vocational expert in light of the challenges to the RFC. Since this Court found the RFC was supported by substantial evidence and the questioning of the vocational expert posed by the ALJ mirrored the RFC findings, no error is found at step five.

**Conclusion**

The decision of the Commissioner is supported by substantial

10

evidence and the correct legal standards were applied.  Therefore,
this Court finds, in accordance with the fourth sentence of 42
U.S.C. § 405(g), the ruling of the Commissioner of Social Security
Administration should be and is **AFFIRMED**.

IT IS SO ORDERED this 25th day of September, 2018.

_____
KIMBERLY E. WEST
UNITED STATES MAGISTRATE JUDGE